Good morning, Your Honors. It's a pleasure to appear before you this morning. I appreciate your indulgence. Preliminarily, I would ask that any time that I have remaining following this argument be reserved for rebuttal. I would also like to note that in this argument I may refer to the Second Amended Complaint as the SAC and to an associated in fact enterprise as an AIF enterprise. There are three principal issues that I'd like to focus on today. The first is whether or not the Temple defendants, that is the law firm and the partner, were required to engage in the operation or management of the RICO enterprise, that is the associated in fact RICO enterprise. The Supreme Court's Turquette decision said that an AIF enterprise consists of a group of persons associated together for a common purpose of engaging in a course of conduct. Here the SAC and the RICO case statement includes specific allegations that the defendants associated together and used fraudulent means to achieve their common objectives of maintaining control of the trust, of maintaining their positions as trustees and service providers and of maximizing the fees that they took from the trust. On this basis I believe it is clear that the defendants meet the definition of an AIF enterprise. The Odom Court went on to cite Turquette's holding that a plaintiff only needs to allege the existence of two facts in order to properly show the existence of an AIF enterprise. First evidence of an ongoing organization and second evidence that the associates function as a continuing unit. In the case before you, the SAC alleges far more than two predicate acts of fraud that were the subject of coordinated activity among the defendants. In fact, even with no discovery permitted, 14 statutes are cited in the RICO case statement as being violated by predicate acts and nine predicate acts were identified specifically including wire fraud, mail fraud and attempted extortion. These predicate acts were coordinated activities designed to further the enterprise's common objectives. The evidence of this coordinated activity includes the documents and the emails that I've cited in the SAC. These include items such as the conspiracy email, the WW email, the preliminary distribution email, the confirmation and the defendants emails of July and September 2006. These documents, like the cross-marketing agreement between Microsoft and Best Buy demonstrate that there is additional evidence here of an ongoing organization. The second criteria in Odom is satisfied if the associates function as a continuing unit. In Odom, an almost two-year time frame was considered far more than adequate to demonstrate and meet this criterion. In this case, the SAC describes multiple predicate acts of the defendants which occurred over almost three years from May 2004. That wasn't the problem the district court had with the allegations. So the problem that the district court had is that neither singly nor collectively do the allegations show that Temple was a participant in directing the affairs of the enterprise. That at the end of the day, when you get rid of the conclusory allegations that she was just acting personally and she was doing lousy legal work, what you end up with is an allegation that she was providing a service to other members of the enterprise, to the trust or to the enterprise. And that doesn't cut it. So you might want to address why you think that was wrong. Well that really goes back to the operation and the application of the operation or management test I believe your honor. Well sure it does, but I mean that's the problem. Let me address that because I think that's kind of where I'm getting to right now. According to the Turquette definition and the two criteria that are set forth in Turquette that you have to meet in order to have an AIF enterprise, I believe you should reach the same result here as in Odom. And the reason is because to do otherwise would contradict. The issue in Odom was a different issue. I mean that had to do with whether you had a structure that was separate and distinct from the enterprise and the extent to which you had to plead that. There's no issue of that here. I mean the law firm, Temple Law Firm, can be a separate and distinct from the client. I mean that's not at issue here. The real question here is how the Reeves test plays out with an associated in fact enterprise allegation. And I don't think it does your honor because I don't believe so. I don't believe so. In fact, going back to your opinion in Niebl versus Transworld, you stated that where FIA was the alleged RICO enterprise and Mr. Niebl was alleging that Transworld was basically responsible for the acts of the enterprise, what you said is in that case Niebl had to some part in directing FIA's affairs. Yes, so I mean, but that's the question here. But your honor. Have you got, have you, and can you point to specific non-conclusory allegations in the complaint or in the RICO case statement that show that Temple either directed the enterprise or was directed as a part of the enterprise rather than as a lawyer providing services? To the trust. Well, your honor. Or trustees. I think you're, inherent in your question is an assumption that the operation or management test must be applied to an AIF enterprise. And I think Turquette and Odom make clear that in a circumstance where you have an associated in fact enterprise, it is not an appropriate case to then. Okay, so let me just clarify this. You are standing or falling on the proposition that when an associated in fact enterprise is alleged, you have no further obligation to show that any particular person or entity conducted the affairs of that enterprise. Well, what I'm saying is that the allegations of the complaint do not have to meet the operation or management test in that circumstance. And the reason is because we are now talking about participants in the enterprise who are pled to be part and parcel of the enterprise from the date of its inception. And the 7th Circuit, excuse me, yes, the 7th Circuit cases, the MCM Partners case, points up that dichotomy very clearly. But the facts in that case were pretty different because the factually pled allegations in that case showed that the member of the enterprise was critical to the enterprise and was in the chain of command taking direction from the enterprise, therefore, was active in conducting its affairs. So, I mean, it's factually different. And again, I come back, if you've got facts to show in your pleading and or in the case statement, it would be very helpful to have them identified that would meet that test. Your Honor, I think that the SAC does include allegations. And of course, since the Court, as it recited in Odom, you're required to take those allegations and the reasonable inferences therefrom as true. I think that I have recited facts there that indicate, in point of fact, that there is the Temple defendants did participate in directing some of the enterprise's affairs. Can I ask the questions, following up on Judge Farmer's question, but from a slightly different direction? In order to hold anyone liable for a legal violation, you're going to need to show the existence of the enterprise and also that there's a person who directed the enterprise. There's three people or three entities that you're saying comprise the enterprise here. And let's assume that we say that Ms. Temple or the Temple defendants are not themselves liable for, as any person who's operating or directing. Does that make a difference? Can a person who's not liable under 1962C still be a part of the enterprise, of the associated, in fact, enterprise? Well I think that goes back to the test, Your Honor, of the role that the Temple defendants would have played in the development of the enterprise itself. Well let's assume that they are not, let's just assume for purposes of this question, that those defendants are not operators and managers of the enterprise. So they couldn't be the person, let's just assume that. Does that mean there is no enterprise? Since you say that the two, Drayson defendant and Ms. Walter, are not themselves the enterprise? Correct. If Temple cannot be held liable under 1962C for failure of the operator and management test, does that mean there's no enterprise, that you have failed to show an enterprise? I think that as long as she can still be shown to be a lower rung participant, as the cases in this area demonstrate, if she's, as long as she is a lower rung participant, that is all that needs to be alleged and proven in order for this to go to the jury. And I think I want to make two points, Your Honor, about that. One, that the jury, this is, according to the two cases that I cited in my briefs, this is an issue for the jury. It is not an issue for the district court. And as you saw, the district court spent 11 pages weighing the evidence of whether or not the Temple defendants participated in the operation or management of the enterprise. And then, as you all have seen also, unfortunately, the rulings of the magistrate judge deprived me of the opportunity to even have any opportunity to defend against this alleged lack of participation, because the magistrate judge prevented and ruled against any discovery, including the discovery of what was on the defendant's privilege logs. And if there isn't a classic case here of the privilege being used as a sword and a shield, I would submit to you, this is it. So on that basis, and as reflected in the Glickstein case, that's where I would ask this court to rule and overturn the district court. Thank you. Okay. Thank you. Mr. Walter. May it please the court. Mr. Walter, my name is Mark Bernstein. I represent Defendant Elizabeth Walter. With me here today are Attorney Shelton Jim Ahn, who represents Mr. Dresen, the defendant, and also Mr. Hiro Oka, who represents Karen Temple and her law firm. We've consulted amongst ourselves concerning how we should proceed here, and based upon the arguments that we've heard, the defense believes that no further argument by the defendants is really warranted. We are, however, willing to and wish to answer any questions that the panel may have. We've divided those subjects up amongst, you know, our particular interests, so that if the court was to ask concerning the operation and management test, Mr. Hiro Oka would be responding to that. That was his line on his brief, and so on and so forth. May I answer Judge Ikuda's question? Yes. I'd like to direct the same question that I directed to Mr. Walter, which is, in order to establish liability under 1962C, you need to show both an enterprise and the person who's directing the enterprise. Here the enterprise is alleged to be Mr. Dresen, Ms. Walter, and the Temple defendants. Let's assume that the Temple defendants are not operators and managers. Yes. Does that mean there is no enterprise, or can there still be an enterprise? In answering that, please address the Living Designs case, which seems to hold there would be an enterprise in those circumstances. Well, in that circumstance, what you have is this classic example of someone calling the same people by a different name. If we eliminate the Temple defendants, what we have is trustees performing trust actions being labeled as the enterprise for conducting exactly what it is that trustees do. But that's okay, right? Under Odom, we have two businesses, and we say the enterprise, which is the two businesses with their marketing agreement, is different than a business, the businesses separately. So we've said that's okay. But these aren't two businesses. These are two trustees in a trust that requires there be multiple trustees, and the trust can only act through the trustees. The trustees are doing the very acts that they're obligated to do under the trust document. We don't have the trustees coming together with another party and having a joint marketing plan or a joint agreement to do other things. Let's assume that there's nothing special about trustees and that they are two businesses. Using that hypothetical, is there still an enterprise? I don't see how I can eliminate that. What you're doing when, you know, what Mr. Walter has done is essentially called the defendants who are doing the same things by different names. We come back to that. We keep coming back to that because what you do is we say the trustees sent out, you know, an accounting. The trustees managed an asset. The trustees did what trustees do. But now I'm going to call those trustees doing that a separate and distinct enterprise. How can it be? Now, in living design, it was all right that there was DuPont and there were DuPont's lawyers and DuPont's expert witnesses, and that was the enterprise, and yet DuPont could be the person who was operating and managing the enterprise. Why is that different than this situation? Even if the trustees were a unit, it would seem you would have the trustees and the temple defendants. Why isn't that enough for an enterprise? Well, in your hypothetical, Your Honor, you asked me to eliminate the temple defendants and just talk about the trustees. My question was, did it matter that the temple defendants were not operators and managers? Is that necessary in order for there to be an enterprise? Well, I think that you can't have an enterprise without it being operated and controlled by  So by the trustees. In other words, it's participating. Yes, by the trustees. In other words, if these trustees had gone out and gotten into the business of loan sharking and it was just the two trustees and their lawyer, I mean, you would have that type of enterprise because now they're outside of doing what it is that trustees do. In DuPont, what you have is you have lawyers and the organization all of a sudden out there essentially engaged in what is alleged to be a criminal, a truly criminal enterprise, as opposed to a trustee being accused of stealing because she paid a bill. Trustees being accused of stealing because they failed to rent a condominium out. You know, arguments, I mean, allegations which are simply implausible on their face, which is in my, you know, from my position, the single biggest problem with the complaint is that when you look at the complaint, look at the allegations and you accept the allegations that are supposed to be true, then, you know, then you will, they're just implausible. Mr. Hirooka wishes to address your question concerning DuPont. So I'll certainly let him. Good morning. My name is Keith Hirooka. I represent the Temple Defendants. Judge Ikuta, you asked about the Living Designs case. I think the Living Designs is fundamentally different from this case because in the words of the decision in Living Designs, the associated, in fact, enterprise was a litigation enterprise. And in that case, the predicate acts that were alleged were mail fraud, wire fraud, and obstruction of justice committed by DuPont's attorneys in the course of discovery in the underlying Bentley litigation. And in fact, in Living Designs, the court said, the court noted at 431F3rd at page 362 that in litigation, the attorney retains control over tactical and strategic decisions. And that was an important part of DuPont, of Living Designs. And that's what distinguishes that case from this case, Your Honor. That showed that the lawyers were separate. But was there anything here saying that they were operating and managing the enterprise? Yes, it does. Because under the facts of the DuPont case, although the lawyers weren't defendants, the issue wasn't in DuPont whether the lawyers operated or managed the enterprise. So that wasn't an issue in that case. But under the facts of that case, what lawyers in litigation do in responding to discovery, which was the predicate act alleged, is the litigators decide, draft the responses. The litigators sign the responses under Rule 11. The litigators serve the responses using interstate commerce. And so in that case, because of the specific allegations constituting the predicate acts, the litigators in that case, I submit on the facts, did take part in directing the affairs of the litigation enterprise as it was described in DuPont. They operated and managed that litigation enterprise. That's not what we have in this case, Your Honor. We have an attorney who is advising clients. The attorney provided advice. The clients were the ones who directed their own activities, albeit based on the attorney's advice, allegedly. But that doesn't make the attorney someone who operates or manages the client's affairs. Clients should be allowed to rely on advice of counsel in operating and managing their own affairs. And that doesn't turn the attorney into a RICO person who operates and manages the client's affairs. In a case like this where we're not talking about an attorney signing and serving discovery responses in litigation that are allegedly fraudulent and designed to have somebody agree to a settlement that they wouldn't otherwise agree to. But assuming even that the Temple defendants are not a person for purposes of 1962C, can they still be part of the enterprise? I mean, that's how I read Living Design. The court made no finding that the lawyers there, the expert witnesses, were operating and managing, whether the facts supported that or not. And yet the court said, you know, that constitutes an enterprise for purposes of 1962C. I don't believe that that was necessary to the holding, Your Honor. I think that it may be because I think under the RICO case law, DuPont being a corporation is sufficient to constitute an enterprise for RICO purposes by itself. Right, but it couldn't be both the enterprise and the person, right? It couldn't be the enterprise and the person, but then DuPont wouldn't have been decided the way it was if the lawyers didn't have some kind of operation or management responsibility. And in fact, a portion of the Living Design's opinion points to that because otherwise the court wouldn't have made a point of saying that at 362 of 431F3rd that the attorneys retained control over tactical and strategic decisions. So I think it was important to that case that the court did believe, although it didn't hold, didn't need to, in that case that the attorneys operated and managed the litigation enterprise. May I ask another question? There's also a conspiracy claim against the Temple defendants. And under our decision in Fernandez, we said that the defendant could be guilty of conspiracy to violate 1962C if the evidence showed that she had knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise. Even if the Temple defendants weren't liable under 1962C, why wouldn't they still be potentially liable for a conspiracy under 1962D? Because in order to have anyone liable under subsection C, there needs to be an enterprise, and it would be bootstrapping the conspiracy claim into the main claim if one could be a co-conspirator without being a part of the enterprise. Let's assume that we found that there was an enterprise and a person, even though the Temple defendants weren't liable under 1962C, but we found that there was enough to state a 1962C action. Then would the Temple defendants be potentially liable under 1962D? Why wouldn't they? If the Temple defendants weren't... They weren't liable under 1962C. They weren't the person. Then they couldn't be a RICO. Only RICO persons could be responsible for liability as a co-conspirator because you still need to have the minimum. Even if you're a lower rung participant, you need to participate in the operation or management. That's what Fernandez says, right? It says agreeing to facilitate a scheme. It doesn't say that you need to yourself be a person who's operating and directing. But agreeing to facilitate the operation and management of a RICO enterprise is... We have said facilitate a scheme, which includes the operation or management. So you don't have to actually be involved in operation and management. Then I think, Your Honor, we have to go back to our position that there is no scheme. There is no enterprise, but I think under... If the court found that there was potential liability of somebody under subsection C, then I don't know that I could distinguish that situation other than to say that in this case, because in Hawaii, a trust is not an entity. It's a fiduciary relationship. There is no enterprise. Does the court have any other... Okay, thank you. Mr. Holder, we used up some extra time here, so we'll equalize it and give you a couple of minutes to respond. Thank you, Your Honor. And Judge Ikuda, I actually did... In some of the argument that I didn't get to, I was actually focused on the fact that I think this case has a lot more similarities to living designs than it does, for example, to Balmer. And I do believe, Judge Reimer, I'm not going to stand and fall, as you put it, solely on the issue of whether or not an associated in effect enterprise has to... that there has to be operational management by the law firm. I pointed out in my briefs the fact that there is ample evidence here that the Temple defendants were intimately involved in the communications that went on among the participants in this RICO enterprise. They received the conspiracy email, which, on its face, by not responding to that appropriately and professionally, that allowed this entire scheme to unfold. Had the Temple defendants done that which they should have done, which is either advise the settlor of the trust of the fact that the other two trustees were planning to have her removed, or if they had gone to a court of competent jurisdiction and said, Judge, we have a problem, and... See, my problem is that that is just core legal advice. It may be good advice, it may be bad advice, but it's the core service that a lawyer performs. And the fact that the lawyer didn't perform it in a way that is optimum from your point of view doesn't mean that that lawyer was actually directing or conducting, which is required, it seems to me, for both the conspiracy and RICO. You've got to conduct, have somebody who's conducting the affairs of an enterprise. Well, and I think it's clear that the two trustees were conducting the affairs of this enterprise, and if you consider the Temple defendants to be a lower-rung participant, I think that's an appropriate view based on living designs. But I would also go back to you and say, I think it's important to look at the fact that there was no legal advice that was given in this scenario when the conspiracy e-mail went out. The Temple defendants got this e-mail, and the fact that their professional duties, I think, not only their professional duties, but their obligation under the law, was to inform a court of competent jurisdiction or the settlor of the fact that this had been suggested by the two trustees were copied on this, as well as a non-litigant, a non-party to this thing. So I guess that's where I don't see that was legal advice at all. In fact, what I see here is that the Temple defendants got this e-mail and failed to do anything that a lawyer would have done and properly should have done. Had she done so, none of this would have happened. Well, in effect, are you saying that whenever you give advice to a client, I don't know if you still practice or not, but whenever you give advice to a client, no matter what its scope, no matter what it says, but you have a communication with your client and you also communicate with someone else who has an interest in what's going on but isn't your client, that that means that you're vulnerable to a RICO claim? I don't think I'm saying that at all. I think I'm saying this kind of goes back to the Code of Professional Conduct. If you think about it, what I'm saying is, and stay with me here. I am trying to. Sorry. If the lawyer, if I wouldn't be giving advice, if I got an e-mail from someone else that said, from one of my clients that was also addressed to a non-client, I wouldn't be giving advice if I got an e-mail that simply said, let's get rid of somebody because this person is standing in the way of us taking control of this trust. I don't think that's legal. It's certainly not legal advice to receive that e-mail. Now, whatever she said in response. Even if you're negotiating with the other side. The other side's not your client. The other side's the other side. They're the bad guys. And so you have a communication with the bad guys. That then makes all the difference for purposes of whether a lawyer rendering services is liable to be a person conducting an enterprise. I don't think so, and I don't think I'm saying that. Because I think when you get right down to it here, what you have, if I'm negotiating with the other side, and then I become aware of the fact that the other side is going to commit a criminal act. They are going to commit an act which is going to obligate me to do something under the professional standards. What am I going to do? I've got to do one of two things. I've got to either go to the court or I've got to go to the settlor, and I've got to make sure that everybody understands what the criminal act that is being attempted here, I have a professional responsibility to inform the appropriate parties. That's not legal advice. I don't think that's legal advice at all. Okay. Anybody else? All right. Thank you, all of you. Thank you. The matter I just argued will be submitted.
judges: Goodwin, Rymer, Ikuta